UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH E. WELLS, | ) | CASE NO.  1:22-cv-01969 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

This matter is before the Court upon the Report and Recommendation of Magistrate Judge Jennifer Dowdell Armstrong ("R&R") (Doc. No. 12) recommending that the decision of the Commissioner be affirmed.  Plaintiff timely objected to the R&R (Doc. No. 13), and Defendant filed a response (Doc. No. 14).  For the reasons that follow, Plaintiff's objection is OVERRULED, the R&R is ACCEPTED, and the decision of the Commissioner is AFFIRMED.

I.      **Factual and Procedural Background**

Plaintiff does not object to the facts laid out in the R&R.  (*See* Doc. No. 13.)  Therefore, the Court incorporates the facts of this case as stated in the R&R.  (*See* Doc. No. 12 at 1432-42.)[1]

The procedural background of this case is as follows.  On November 19, 2020, Plaintiff filed an application for Supplemental Security Income ("SSI") alleging an onset date of October 2, 2004.  (Doc. No. 7 at 494.)  Plaintiff's application was denied initially and upon reconsideration.  (*See id.* at 405, 410.)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.* at 426.)  On October 12, 2021, the ALJ held a telephonic hearing.  (*Id.*

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

at 465-69.) Plaintiff testified at the hearing and was represented by counsel. (*Id.*) The ALJ also heard testimony from an impartial vocational expert. (*See id.*)

On October 25, 2021, the ALJ issued a written decision finding that Plaintiff was not disabled. (*Id.* at 45-67.) On September 9, 2022, the Appeals Council declined to review Plaintiff's case, making the ALJ's decision final. (*Id.* at 30-33.)

On November 1, 2022, Plaintiff timely commenced this action. (Doc. No. 1.) On March 7, 2023, Plaintiff filed a brief on the merits. (Doc. No. 8.) On April 20, 2023, Defendant filed a brief on the merits. (Doc. No. 10.) On October 13, 2023, the Magistrate Judge issued her R&R recommending that the Court affirm the Commissioner's final decision. (Doc. No. 12.) Plaintiff timely filed an objection on October 25, 2023. (Doc. No. 13.) On November 1, 2023, Defendant filed a response to Plaintiff's objection. (Doc. No. 14.)

## II.     **Standard of Review**

A district court "shall make a *de novo* determination of those portions or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C) (flush language); *see Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to *de novo* review by the district court in light of specific objections filed by any party.") (citations omitted). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C) (flush language).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

2

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The impairment must prevent the claimant from doing the claimant's previous work, as well as any other work which exists in significant numbers in the region where the individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A).  In making a disability determination, an ALJ engages in a five-step sequential evaluation:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.  To be severe, the claimant must have a severe medically determinable physical or mental impairment, or a combination of impairments, that must have lasted or be expected to last for at least 12 months, unless it is expected to result in death.

3. If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment in Appendix 1 to Subpart P of Part 404, the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work.  If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 426 (6th Cir. 2018) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)).  During the first four steps, the claimant has the burden of proof. *Walters*, 127 F.3d at 529.  The "burden shifts to the Commissioner only at step five." *Id.*

The Court's review of the Commissioner's decision to deny benefits is limited to determining whether the ALJ applied the correct legal standards and whether the findings are

supported by substantial evidence. 42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal citation omitted)).

If substantial evidence supports the Commissioner's finding that the claimant is not disabled, that finding must be affirmed even if the reviewing court would decide the matter differently. *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted). A reviewing court is not permitted to resolve conflicts in evidence or to decide questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted). The Commissioner's decision must be affirmed even if the claimant's position is also supported by substantial evidence. *Wallace v. Comm'r of Soc. Sec.*, 221 F.3d 1337 (Table), 2000 WL 799749, at *2 (6th Cir. 2000) (citing *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)).

### III. Discussion

#### A. The Magistrate Judge's Report and Recommendation

The R&R correctly noted that this Court's "review 'is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards,'" (Doc. No. 12 at 1442 (quoting *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015))), and the requisite five-step process used to determine whether a claimant is entitled to SSI or disability insurance benefits. (*See id.* at 1443-44.) It then considered Plaintiff's merits arguments.

4

For Plaintiff's first merits argument, he asserted: "(1) that the ALJ erred in finding that [Plaintiff] had only moderate limitations in understanding, remembering, or applying information; and (2) that the ALJ erred in finding that [Plaintiff] had only moderate limitations in interacting with others." (*Id.* at 1444.) The R&R described the proper process at step three, noting that the "ALJ must 'compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment.'" (*Id.* at 1445 (quoting *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011)).) The R&R further described a "zone of choice" within which "the Secretary may proceed without interference from the courts" so long as the "decision is supported by substantial evidence." (*Id.* (citing *Gay v. Comm'r of Soc. Sec.*, No. 1:20-cv-180, 2021 WL 855120, at *5 (N.D. Ohio Mar. 8, 2021)).)

Having set out the standard at step three, the R&R addressed the Commissioner's argument that Plaintiff forfeited any arguments related to Listings 12.11 and 12.15 by failing to raise these listings before the ALJ. (*Id.* at 1446-48.) The R&R reasoned that because "there was no explicit reference to *any* listing by *anyone* during the hearing," Plaintiff had not waived these arguments. (*Id.* at 1448 (citing *Haines v. Comm'r of Soc. Sec.*, No. 5:22-cv-1161, 2023 WL 3990654, at *2 (N.D. Ohio June 14, 2023)).) The R&R distinguished case law cited by the Commissioner and highlighted instances in the transcript where the ALJ addressed Listings 12.11 and 12.15 by referring to the severity of Plaintiff's mental impairments. (*Id.*)

Next, the R&R addressed Plaintiff's argument that the ALJ erred in finding that Plaintiff had only a moderate limitation in understanding, recalling, and using information. The R&R noted that "neither party disputes that the ALJ mischaracterized [Plaintiff's] ability to manage money" in finding that Plaintiff could "pay bills, count change, handle a savings account, and use

5

a checkbook/money order." (*Id.* at 1449 (citing Doc. No. 7 at 51).) The R&R highlighted that Plaintiff's ability to handle money was just "one of several data points cited by the ALJ." (*Id.*) The ALJ's decision offered "other valid, substantial evidence to support the conclusion that [Plaintiff] has no more than a moderate limitation in his ability to understand, remember rand apply information." (*Id.*) Specifically, the ALJ also considered Plaintiff's ability to use public transportation, shop for clothes and hygiene products twice a month, and go places without relying on reminders as evidence of only moderate limitations. (*Id.*)

The R&R also addressed Plaintiff's argument that the ALJ did not acknowledge that Plaintiff's full scale IQ is 66, which is "indicative of significantly sub-average general intellectual functioning." (*Id.* at 1450 (citing Doc. No. 8 at 1411).) The ALJ "specifically discussed [Plaintiff's] full scale IQ score of 66 and stated that such a score is 'consistent with borderline intellectual disability.'" (*Id.* (citing Doc. No. 7 at 51).)

With respect to Listings 12.11 and 12.15, the R&R observed that the "threshold for the sufficiency of substantial evidence is 'not high.'" (*Id.* at 1451 (citing *Biestek v. Berryhill*, 578 U.S. ---, 139 S.Ct. 1148, 1154 (2019)).) Accordingly, the R&R stated that there is "substantial evidence in the record to support the ALJ's conclusion that [Plaintiff] does not have marked limitations in understanding, remembering, and applying information." (*Id.*)[2]

Regarding Plaintiff's argument about his limitations interacting with others, the R&R noted that Plaintiff's reliance on Dr. Faust's opinion was misplaced. Dr. Faust only opined that Plaintiff had "'some limitations' responding appropriately to supervision to coworkers in an employment setting" as a result of his borderline intellectual functioning and PTSD. (*Id.* at

---

[2] The R&R also stated that to the extent Plaintiff attempted to show that he met the requirements of listing 12.05, this claim failed because he did "not elaborate how he met every criteria for this listing." (Doc. No. 7 at 1450.)

1452.) Accordingly, this opinion does not support a finding of a marked limitation.

Finally, the R&R reviewed the ALJ's residual functional capacity ("RFC") analysis. (*Id.* at 1453.) The ALJ found that Plaintiff's limitations included "occasional and superficial interaction with coworkers and supervisors," and "no public interaction or tandem work." (*Id.* (citing Doc. No. 7 at 56).) The ALJ defined "superficial" in this context as "the ability to ask and answer simple questions, give or follow simple directions, understand or incorporate simply correction or criticism." (*Id.*) According to the R&R, "[t]hese limitations are internally inconsistent with the regulations because they reflect marked limitations." (*Id.* at 1454 (citing cases).) However, the R&R observed that even if the ALJ erred in finding that Plaintiff had only moderate limitations in his ability to interact with others, Plaintiff still failed to show that he meets the requirements of Listing 12.11 or 12.15 because he has not demonstrated marked imitations in two or more areas of functioning. (*Id.*) Accordingly, the R&R recommended that the Commissioner's decision be affirmed. (*Id.* at 1455.)

### B. Plaintiff's Objection

Plaintiff offered one specific objection to the R&R: there was not "substantial evidence in the record to support the ALJ's conclusion that Plaintiff does not have marked limitations in understanding, remembering and applying information." (Doc. No. 13 at 1457.) Plaintiff agreed with the R&R in that the ALJ mischaracterized Plaintiff's ability to manage money. (*Id.* at 1458.) However, Plaintiff argued that the R&R "unreasonably determined that this inaccuracy was not significant" in light of the "other valid evidence to support the conclusion that Plaintiff had no more than a moderate limitation in this area of functioning." (*Id.*) In support of this argument, Plaintiff highlighted the portion of the ALJ's decision which discussed Plaintiff's ability to handle money:

7

> The ability to manage one's own funds effectively, particularly in cases that may involve granted a relatively large sum of money to an individual at one time, requires significant cognitive facilities such as performing calculations, making financial decisions, dealing with financial institutions, and managing one's personal checking and/or savings accounts. Such activity is inconsistent with serious, marked, or worse mental limitations in these areas of functioning.

(*Id.* (citing Doc. No. 7 at 52).) Plaintiff argued that this analysis shows that "the ALJ's mischaracterization of Plaintiff's ability to manage money was a key component in the ALJ's finding that Plaintiff has only moderate limitations in his ability to understand, remember, and apply information." (*Id.*)

Next, Plaintiff objects to the "other valid reasons" the R&R highlighted. (*Id.*) Plaintiff argues that "activities such as an ability to use public transportation, spending two to three hours shopping in stores for clothes and hygiene products twice a month and going places with no need for reminders are not inconsistent with marked limitation in Plaintiff's ability." (*Id.*) Instead, Plaintiff argues that mental status examinations show that "Plaintiff presented with simple and concrete thinking and he frequently needed questions broken down." (*Id.* (citing Doc. No. 7 at 51).)

Lastly, Plaintiff argues that the R&R minimizes the significance of Plaintiff's IQ scores. (*Id.* at 1459.) He claims the R&R misconstrued his argument regarding his "significantly subaverage general intellectual functioning" as an attempt to make an argument under Listing 12.05. (*Id.*) To Plaintiff, arguments relating to IQ scores were meant to "point[] out that the regulations acknowledge an IQ of 66 [indicates] serious limitations on a claimant's intellectual functioning." (*Id.*)

### C. *De Novo* Review

Plaintiff claims that his severe mental impairments meet the requirements of listing 12.11, which discusses neurodevelopmental disorders, and listing 12.15, which discusses trauma-

8

and stressor-related disorders. (*See* Doc. No. 8 at 1400; Doc. No. 13 at 1459.) Both of these listings have "paragraph A" and "paragraph B" criteria that a claimant must satisfy.

For both listings 12.11 and 12.15, paragraph A describes the necessary diagnostic criteria for each respective listing. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 12.11, 12.15. The ALJ did not expressly find that Plaintiff satisfied the paragraph A criteria. The ALJ's decision implies it. (*See* Doc. No. 7 at 48.) But, in any event, that the criteria for paragraph A is satisfied is not disputed. (*See* Doc. No. 10 at 1422 (not contesting paragraph A as it relates to Plaintiff); Doc. No. 8 at 1410.)

Moving now to Paragraph B. Paragraph B is the same for both 12.11 and 12.15, and it provides considerations for determining whether a claimant's functioning is limited by their mental impairments. Paragraph B requires:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>
>   1. Understand, remember, or apply information (see 12.00E1).
>
>   2. Interact with others (see 12.00E2).
>
>   3. Concentrate, persist, or maintain pace (see 12.00E3).
>
>   4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, §12.11, 12.15.

The ALJ concluded Plaintiff had moderate limitations for all four areas of functioning. (*See* Doc. No. 7 at 50-56.) For purposes of this review, only the ALJ's determinations regarding paragraphs B(1) and B(2) are disputed.

### 1. Plaintiff's Ability to Understand, Remember or Apply Information

The ability to "[u]nderstand, remember, or apply information,"

refers to the abilities to learn, recall, and use information to perform work activities.

9

> Examples include: Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00E1.

With respect to these abilities, the ALJ found that Plaintiff was moderately limited because:

> After reviewing the medical evidence of record available to them, including some of the aforementioned mental status examination findings, the state agency psychological consultants opined that the claimant has moderate limitations in these areas of mental functioning (3A/4 5A/5). The claimant reported that he is able to pay bills, count change, handle a savings account, and use a checkbook/money order; he is able to go out alone (3E/4). The ability to manage one's own funds effectively, particularly in cases that may involve granting a relatively large sum of money to an individual at one time, requires significant cognitive facilities such as performing calculations, making financial decisions, dealing with financial institutions, and managing one's personal checking and/or savings accounts. Such activity is inconsistent with serious, marked, or worse mental limitations in these areas of functioning.

(Doc. No. 7 at 51-52.)

The parties do not dispute that the ALJ's decision mischaracterized the evidence on the record regarding Plaintiff's ability to manage money. (*See* Doc. No. 12 at 1499; *Compare* Doc. No. 7 at 51 *with* Doc. No. 7 at 523 (Plaintiff's testimony that his PTSD prevents him from using a savings account, money order, or checkbook) *and* Doc. No. 7 at 901 (consultative examining psychologist's conclusion that plaintiff "does not appear to have the mental ability to manage his funds if he is awarded benefits due to borderline intellectual functioning").)

The Court must then determine if, after excluding any mischaracterizations about Plaintiff's ability to handle money, substantial record evidence remains to support the ALJ's determination that Plaintiff has a moderate, not marked, limitation in his ability to understand,

10

remember, and use information. *See* 42 U.S.C. § 405(g); *Kyle*, 609 F.3d at 854.

Other than Plaintiff's ability to manage money, the ALJ considered two other sources of support for her conclusion regarding Plaintiff's moderate limitation. First, the ALJ considered the activities described in Plaintiff's adult function report and testimony. Specifically, the ALJ noted Plaintiff's ability to "get around by using public transportation" "shop for clothes and hygiene products[] multiple times per month," go places without reminders, and drive as support for a moderate limitation. (Doc. No. 7 at 51.)

Second, the ALJ also considered Plaintiff's mental status examinations. Specifically, the ALJ noted that Plaintiff's mood, affect, behavior, judgment, thought content and speech were all normal. (*Id.*) The ALJ further observed that Plaintiff "had no difficulty understanding simple questions" or "tracking conversation." (*Id.*) The ALJ acknowledged that these examinations did "show some degree of impairment," including that Plaintiff "presented as simple and concrete in his thinking" and that he "frequently needed questions broken down." (*Id.*) In sum, the ALJ concluded that these examinations did "not show that [Plaintiff] has experienced significant difficulty in these areas of functioning[.]" (*Id.*)

Plaintiff objects that this additional evidence is either "not inconsistent with marked limitations" or "not relevant." (Doc. No. 13 at 1458.) This objection is not well taken. Plaintiff cites no authority to support his argument that the mental status examinations preclude the ALJ's finding of moderate limitations.

The Court found one out-of-district decision that sheds some light on how other courts may view a similar challenge. In *Williams v. Commissioner of Social Security*, the ALJ found that the plaintiff had only moderate limitations in her ability to understand, remember and use information. No. 18-cv-11202, 2019 WL 265382, at *1 (E.D. Mich. Jan. 18, 2019). Despite

11

plaintiff's "difficulty understanding what is said to her and driving," the ALJ concluded that plaintiff could still "prepare meals, pay bills, take medications, take public transportation, and shop" as well as "provide information about her health, describe her prior work history, and respond to questions from medical providers." *Id.* at *3. The record also showed that plaintiff had an IQ of 54-56, suffered from schizophrenia, adjustment disorder, a number of degenerative changes, and obesity. *Id.* Additionally, plaintiff testified that she required help dressing and bathing, sometimes urinated on herself, and always had someone accompany her to the bus stop to ensure she boarded the right bus. *Id.* at *5.

The court found this evidence to be conflicting, and, as a result, concluded that the ALJ's decision was not supported by substantial evidence. *Id.* at *4. The court found that "an assessment of plaintiff's memory and judgment, both of which appeared to be severely compromised" would be "[m]ore relevant to 12.00E1." *Id.* The court concluded that "the record, in its current state, is not such that 'proof of disability is overwhelming or . . . proof of disability is strong and evidence to the contrary is lacking.'" *Id.* (quoting *Faucher v. Sec'y of Health & Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The court remanded the matter "so that the record may be further developed." *Id.*

Though *Williams* may offer persuasive direction for the Court's review of the ALJ's decision, it does not support a remand here. Unlike *Williams*, the record in this case is sufficiently developed to assess Plaintiff's disability. And, unlike in *Williams*, there is no evidence in the record that Plaintiff requires assistance using public transportation, dressing, or bathing or that his memory and judgment are severely compromised. In sum, there are no significant conflicts in the record, but rather a dispute about what characterization should result from the evidence – moderate or marked.

12

Plaintiff can drive a car and has a license. (Doc. No. 7 at 897.) He can take public transportation without assistance, shop for hygiene products and clothes, conduct his affairs without repeated reminders. (*Id.* at 523-24.) When considered together and against the pertinent factors in Section 12.00E1, these activities reflect his ability to understand procedures; following one- or two-step oral instructions; recognize a mistake and correcting it; identify and solving problems; sequence multi-step activities; and use reason and judgment to make decisions.

In sum, the ALJ's reliance other evidence in the record constitutes substantial evidence. *See McGlothin*, 229 F. App'x at 521. Accordingly, the Court accepts the R&R's recommendation that this part of the ALJ's decision be affirmed.

## 2. Plaintiff's ability to interact with others

A plaintiff's ability to interact with others

> refers to the abilities to relate to and work with supervisors, co-workers, and the public. Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00E2.

With respect to these abilities, the ALJ found Plaintiff was moderately limited because

> After reviewing the medical evidence of record available to them, including some of the aforementioned mental status examination findings, the state agency psychological consultants opined that the claimant has moderate limitations in this area of mental functioning (3A/4; 5A/5). The undersigned acknowledges that the claimant's mental impairments have impacted the ability to interact with others to some degree; however, the mental status examinations and the persuasive portions of the medical opinions do not support that the claimant experiences a significant or marked degree of limitation in interacting with others. The evidence of record establishes that the claimant's residual functional limitations are no worse than fair. Accordingly, the undersigned finds that the claimant has moderate limitation in this area of functioning.

13

(Doc. No. 7 at 53.)  In its RFC analysis, the ALJ found that Plaintiff was:

> able to perform simple, routine, repetitive tasks, with simple short instructions; make simple decisions; have occasional workplace changes, but no fast pace productions; **occasional and superficial interaction with coworkers and supervisors, but no public interaction or tandem work (with superficial meaning the ability to ask and answer simple questions, give or follow simple directions, understand or incorporate simple correction or criticism)**; no reading instructions, writing reports, math calculations (meaning they are able to complete a checklist or use calculator or cash register, but should not be required to perform math calculations in their head or on paper, but they can read a list and check items off that list).

(*Id.* at 56 (emphasis added).)

The RFC's limitations are inconsistent with a moderate limitation in Plaintiff's ability to interact with others.  *See Brewer v. Comm'r of Soc. Sec.*, No. 5:19-cv-1854, 2021 WL 1214837, at *6 (N.D. Ohio Mar. 31, 2021) (holding that restrictions like "occasional contact with the public," "occasional interaction with coworkers," and "superficial interactions with others" were inconsistent with moderate limitations in social functioning because "[t]hese restrictions reflect marked limitations").  Instead, they are consistent with marked limitation in the ability to interact with others.  *See Walp v. Saul*, No. 4:18-cv897, 2019 WL 3811832, at * 4-5 (N.D. Ohio Aug. 14, 2019) (holding a RFC that restricted the plaintiff to "occasional and superficial interaction with co-workers, and no contact with the public" accommodated the plaintiff's "marked limitations in his ability to interact with others"); *Miller v. Colvin*, No. 3:15-cv-294, 2016 WL 154127, at *9 (W.D. Ky. Jan. 12, 2016) (holding that restricting a RFC to "no interaction with the general public and only occasional, but superficial, interaction with co-workers and supervisors combined with no close tandem work" took into account the plaintiff's marked limitation in social functioning); *see also Libertore v. Comm'r of Soc. Sec.*, No. 5:11-cv-1245, 2012 WL 3815622, at *11 (N.D. Ohio July 26, 2012) (holding that restricting a RFC to "jobs without arbitration, confrontation, or negotiation, and further involving only superficial interpersonal

14

interaction with the public or co-workers" accommodated marked limitation in social functioning), *report and recommendation adopted*, 2012 WL 3815626 (N.D. Ohio Sept. 4, 2012).

This internal inconsistency may call into question the ALJ's conclusion that Plaintiff has moderate limitations in his ability to interact with others. However, the ALJ's error in this analysis is harmless as "its correction would not change the outcome" for Plaintiff. *Prater v. Astrue*, No. 4:08-cv-83, 2010 WL 1257882, at *8 (E.D. Tenn. Mar. 3, 2010); *see Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 654-57 (6th Cir. 2009) (holding that errors in evaluating paragraph B criteria are harmless because "a reviewing court need only ask whether the record indicates that the claimant's mental impairment would have ultimately satisfied the [paragraph] B criteria"). The record indicates that Plaintiff's mental impairment does not ultimately satisfy the paragraph B criteria because he has not shown a marked limitation in another area of functioning, or an extreme limitation in one area. Accordingly, the Court will not review the ALJ's determination regarding Plaintiff's ability to interact with others. *See Rabbers*, 582 F.3d at 654 ("Generally, however, we review decisions of administrative agencies for harmless error.").

### IV.   Conclusion

For the reasons stated herein, Plaintiff's objection is OVERRULED, the R&R is ADOPTED, and the Commissioner's decision is AFFIRMED. This case is DISMISSED.

**IT IS SO ORDERED.**

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE

Date: March 29, 2024